

**Office of the New York State**
**Attorney General**

**Letitia James**
**Attorney General**

July 24, 2026

Hon. Catherine O'Hagan Wolfe
Clerk of Court
United States Court of Appeals
 for the Second Circuit
40 Foley Square
New York, New York 10007

    Re:    *KalshiEX LLC v. Williams*, No. 26-1835

Dear Ms. Wolfe:

I am counsel for defendants-appellees—eight officials of the New York State Gaming Commission sued in their official capacities.[1] On July 7, 2026, the U.S. District Court for the Southern District of New York (Torres, J.) denied plaintiff-appellant KalshiEX LLC's request for a preliminary injunction barring the Gaming Commission from enforcing state gaming laws against Kalshi. (*See* Decision & Order (July 7, 2026), ECF 106, *amended by*, Order (July 13, 2026), ECF 109.[2]) On July 15, Kalshi moved in the district court for an injunction pending appeal and for administrative relief. (ECF 110.)

Before the district court ruled on Kalshi's request, Kalshi moved for an injunction pending appeal before this Court. *See* Pl.-Appellant's Emergency Mot. for an Inj. Pending Appeal ("Mot.") (July 23, 2026), CA2 ECF 27. I submit

---

[1] These defendants include Executive Director Robert Williams and Gaming Commissioners Brian O'Dwyer, John Crotty, Sylvia Hamer, Martin Mack, Peter Moschetti, Jr., Marissa Shorenstein, and Jerry Skurnik.

[2] Unless otherwise indicated, "ECF" citations refer to entries on the district court's docket and the ECF-imprinted pagination.

this letter to (i) explain why this Court should deny Kalshi's extraordinary request for an interim injunction pending adjudication of this motion, and (ii) request that the Court set defendants' deadline for opposing the motion as Tuesday, July 28, 2026.

## I.    Background

New York strictly regulates gambling, including sports-betting. Mobile operators offering sports-betting must be licensed by the New York State Gaming Commission and comply with all applicable laws and regulations. *See* N.Y. Racing, Pari-Mutuel Wagering & Breeding Law ("Racing Law") § 1367-a(2)(a), (4)(a)-(b).

In January 2025, Kalshi—a federally registered derivatives market—began listing so-called "sports-event contracts" in the State without obtaining a New York license and marketing those contracts as sports-betting. (*See* ECF 35, at 14-15 (¶¶ 44, 47); ECF 53-2, at 3.) Several months later, the Gaming Commission issued a cease-and-desist letter, demanding that Kalshi stop illegally operating a sports-wagering platform in the State. (*See* ECF 35-2, at 2.) In response, Kalshi filed this lawsuit, asserting that the federal Commodity Exchange Act (CEA), 7 U.S.C. § 2(a)(1)(A), preempts the Gaming Commission from enforcing state gaming law against Kalshi because the CEA supposedly confers the Commodity Future Trading Commission (CFTC) with "exclusive jurisdiction" over trading on designated contract markets such as Kalshi. (*See* ECF 35, at 17-19 (¶¶ 56-62); *see also* ECF 1.) Kalshi sought a temporary restraining order and a preliminary injunction barring the Gaming Commission from enforcing state law.[3] (ECF 15.)

On July 7, 2026, the district court denied Kalshi's request for preliminary relief. (Am. Decision & Order, ECF 109.) First, the district court held that Kalshi failed to establish a clear or substantial likelihood of success in demonstrating that the CEA preempts the Gaming Commission from enforcing state gaming laws against Kalshi, even assuming that Kalshi's conduct falls under the CEA. (*Id.* at 12-21.) Second, the district court found that Kalshi's "largely monetary" harms are not irreparable (*id.* at 21), whereas the State's substantial sovereign interests "in regulating gaming in New York" weigh heavily in favor denying preliminary relief (*id.* at 20-21).

---

[3] Defendants agreed to stay enforcement actions by them against Kalshi while the motion was pending, and the parties negotiated a briefing schedule. (ECF 34.)

Kalshi appealed (ECF 107), and defendants agreed to stay any enforcement actions against Kalshi through July 30. On July 15, Kalshi moved in the district court for an injunction pending appeal and for administrative relief. (ECF 110.) Before the district court ruled on Kalshi's request, Kalshi filed this motion. (CA2 ECF 27.)

## II.    Discussion

Unlike a stay pending appeal, which suspends judicial alteration of the status quo, an injunction pending appeal grants judicial intervention withheld by the lower court. *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers); *Agudath Israel of Am. v. Cuomo*, 979 F.3d 177, 180 (2d Cir. 2020). Injunctive relief therefore "demands a significantly higher justification" than a stay and should not be granted except "in the most critical and exigent circumstances." *Ohio Citizens*, 479 U.S. at 1313 (quotation marks omitted); *see Agudath Israel*, 979 F.3d at 180.

In this motion, Kalshi seeks not only an injunction pending appeal but also an "administrative" injunction pending resolution of that motion. Mot. at 26. The Court should deny Kalshi's extraordinary request for at least three reasons.

*First*, Kalshi would suffer no irreparable harm from the denial of an interim injunction. The Gaming Commission does not have criminal jurisdiction. And, as explained, Kalshi faces *no* prospect of any civil enforcement actions in the next week—that is, *through July 30*. Defendants are willing to submit their opposition to the motion by July 28, which will give the Court an opportunity to resolve the motion before July 30. And even if the motion is not resolved by July 30, Kalshi has numerous substantive and procedural protections with respect to any civil penalties that the Gaming Commission may assess. *See* Racing Law § 116 (providing for administrative hearing or opportunity to be heard); N.Y. C.P.L.R. 7803(2) (providing for judicial review).

Kalshi's asserted compliance costs and opportunity costs also do not constitute irreparable injury because, at bottom, Kalshi has not alleged—let alone established—that the mere fact of complying with state law would threaten the "very viability of [its] business." *See Tom Doherty Assocs. v. Saban Ent., Inc.*, 60 F.3d 27, 38 (2d Cir. 1995); *see also Council for Responsible Nutrition v. James*, 159 F.4th 155, 171-72 (2d Cir. 2025) (ordinary compliance costs are not irreparable). Indeed, Kalshi is currently enjoined from offering its

so-called "sports-event contracts" in three States,[4] yet continues to do business in other States.

*Second*, the equities counsel strongly against the entry of an interim injunction pending resolution of the motion. The State's inability to enforce its own laws "clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018). Moreover, delaying enforcement would allow Kalshi to continue circumventing a number of critical safeguards that the State Legislature enacted to protect New Yorkers from the dangers of gambling addiction and predatory operators. An injunction would be particularly harmful to young New Yorkers, who are at especially high risk for gambling addiction. (*See* ECF 53-14, at 4.) With an injunction in place, Kalshi could continue to offer sports-betting illegally to underage eighteen to twenty year-olds, to bombard underage New Yorkers with sports-betting advertisements, and to offer sports bets on New York–based college teams—all in direct violation of New York law.[5] The Sixth Circuit, in a carefully reasoned opinion, recently denied Kalshi's motion for an injunction pending appeal in its lawsuit against Ohio precisely because it found the "equities and public interest" to favor the State. *See KalshiEX LLC v. Schuler ("Schuler II")*, No. 26-3196, 2026 WL 1295806, at *7 (6th Cir. Apr. 24, 2026).

*Third*, as defendants will explain in their brief opposing Kalshi's motion for an injunction pending appeal, Kalshi cannot demonstrate the requisite clear or substantial likelihood of success on the merits. *See New York State Firearms Ass'n v. James*, 157 F.4th 232, 242 (2d Cir. 2025); *Agudath Israel*, 979 F.3d at 180.

As a threshold matter, Kalshi is wrong that its "sports-event contracts" are "swaps" governed by the CEA. *See* Mot. at 17 n.2. Courts around the

---

[4] *See* Order, *Nevada ex rel. Nev. Gaming Control Bd. v. KalshiEX, LLC,* No. 26 OC 00050 1B (Nev. Dist. Ct. Apr. 28, 2026) (ECF 98-1); Order, *Nessel v. KalshiEX LLC*, No. 26-1087-CZ (Mich. Cir. Ct. June 29, 2026) (ECF 112-1); Order, *Washington v. KalshiEX, LLC*, No. 26-2-10264-3 (Super. Ct. July 20, 2026) (ECF 112-2).

[5] *See* Racing Law § 1367(2)(d) (setting minimum age for sports-gambling at twenty-one); *id.* § 1367-a(4)(e) (prohibiting advertising to underage New Yorkers); *id.* §§ 1367(1)(s), 1367-a(4)(a)(xi) (prohibiting sports-betting on New York–based college teams).

country have concluded that sports-event contracts do not meet the relevant statutory definition of "swap" set forth in the CEA, 7 U.S.C. § 1a(47)(A)(ii). *See, e.g., KalshiEX, LLC v. Schuler* ("*Schuler I*"), No. 2:25-cv-1165, 2026 WL 657004, at *5-6 (S.D. Ohio Mar. 9, 2026).[6] In particular, the best reading of the statute limits swaps to "events and contingencies that have a . . . *direct and inherent* association with matters of financial, economic, or commercial consequence." *Schuler I*, 2026 WL 657004, at *5 (emphasis added) (quotation marks omitted).[7] The outcome of a sporting event—for example, the point spread of a college basketball game—plainly fails this test.

Indeed, Kalshi's broad reading of "swap" would lead to absurd consequences. The CEA makes it generally *unlawful* for any person to enter into a "swap" outside of a designated contract market. 7 U.S.C. § 2(e). Thus, if sports wagers are swaps, then virtually *all* sports-betting—including betting that currently takes place via state-licensed platforms—must instead take place on designated contract markets. There is no indication in the CEA's text or history that Congress intended to legalize sports-betting nationwide and to consolidate its regulation in the CFTC to the exclusion of the States. *See Schuler I*, 2026 WL 657004, at *6. Kalshi's contrary position would effectuate a sea change in the balance of federal-state regulatory authority over gaming without the requisite clear statement from Congress. *See Bond v. United States*, 572 U.S. 844, 863 (2014) ("background principle that Congress does not normally intrude upon the police power of the States is critically important").

---

[6] *See also, e.g., QCX LLC v. Nessel*, No. 1:26-cv-710, 2026 WL 1895958, at *2-8 (W.D. Mich. June 17, 2026), *appeal docketed*, No. 26-1552 (6th Cir. June 25, 2026); *North Am. Derivatives Exch., Inc. v. Nevada*, 815 F. Supp. 3d 1169, 1180-86 (D. Nev. 2025), *appeal docketed*, No. 25-7187 (9th Cir. Nov. 14, 2025); *KalshiEX, LLC v. Hendrick*, 817 F. Supp. 3d 1014, 1026-31 (D. Nev. 2025), *appeal docketed*, No. 25-7516 (9th Cir. Nov. 28, 2025). *But see KalshiEX, LLC v. Flaherty*, 172 F.4th 220, 227-28 (3d Cir. 2026); *id.* at 233 (Roth, J., dissenting) (critiquing majority's broad reading of "swap"); *KalshiEX LLC v. Orgel*, No. 3:26-cv-00034, 2026 WL 474869, at *7-8 (M.D. Tenn. Feb. 19, 2026), *appeal docketed*, No. 26-5235 (6th Cir. Mar. 23, 2026); *KalshiEX, LLC v. Johnson*, No. CV-26-01715, 2026 WL 1223373, at *4-5 (D. Ariz. May 5, 2026), *appeal docketed*, No. 26-2978 (9th Cir. May 11, 2026).

[7] *See also Nessel*, 2026 WL 1895958, at *6; *Hendrick*, 817 F. Supp. 3d at 1027-28.

In any event, the CEA would not preempt New York gaming law even if Kalshi's contracts qualified as swaps under federal law. State gaming laws are a core exercise of the States' historic police powers. *See Ah Sin v. Wittman*, 198 U.S. 500, 505-06 (1905). This Court must therefore "start with the assumption" that state law is not superseded unless "that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quotation marks omitted); *see also West Virginia v. EPA*, 597 U.S. 697, 721-24 (2022) (clear statement rule applies to cases raising a major question). There is no such clear statement here, for the reasons explained by the district court. (*See* ECF 109, at 11-21.) Most saliently, the CEA itself contains *two savings clauses* preserving state law, which clearly "negates the inference that Congress left no room for state causes of action," *International Paper Co. v. Ouellette*, 479 U.S. 481, 492 (1987) (quotation marks omitted). *See Schuler II*, 2026 WL 1295806, at *5 (finding application of field preemption to be unlikely, given savings clauses). For similar reasons, Kalshi's conflict preemption arguments are wholly unavailing. (*See* ECF 109, at 17-21.)

*   *   *

The Court should deny Kalshi's request for an administrative injunction pending resolution of this motion. Defendants will expeditiously respond to Kalshi's motion for an injunction pending appeal. Because defendants' filing requires multiple levels of internal review and approvals from different state offices, defendants request that the Court set a due date of Tuesday, July 28, for the opposition.

Respectfully submitted,

/s/ *Grace X. Zhou*

Grace X. Zhou
Senior Assistant Solicitor General
(212) 416-6160
grace.zhou@ag.ny.gov

cc (via CM/ECF):  All counsel of record

6